6L 218
13L 232
15L 638

6L 218
116 513

## JOE MANEY v. THE STATE.

CRIMINAL LAW. *Catching fish. Constitutional law.* The act of 1879, ch. 198, which makes it a misdemeanor to catch fish in the waters of certain counties by any other means than by hook and bait, is constitutional, but under the proviso of the second section, "that the act shall not apply to persons owning private ponds, or to persons owning the land on both sides of a running stream, the same being closed by a substantial fence," a party will not be liable to the penalties of the act who catches fish by net in a stream, within the proviso, by the verbal permission of the owner of the land, although in his absence.

### FROM RUTHERFORD.

Appeal in error from the Criminal Court of Rutherford county. J. M. QUARLES, J.

G. S. RIDLEY for Maney.

ATTORNEY-GENERAL LEA for the State.

COOPER, J., delivered the opinion of the court.

On the 14th of August, 1879, the grand jurors of Rutherford county found a presentment against Joe Maney, the plaintiff in error, for that he did, on the 10th of July, 1879, unlawfully catch and take fish in, and from the waters of that county, to-wit, Stone's river, with and by means of a certain net, and in another manner than by baited hook and line and trot line. From a judgment of conviction under this presentment, the defendant appealed in error.

The presentment was found under the act of 1879, ch. 198. By the first section of this act, it is made unlawful for any person to take fish in any of the waters of certain counties named, and among others, Rutherford county, except by baited hook and line or trot-line. The second section of the act reads thus: "That whoever shall catch any fish in any of the waters of said counties by means of gill-net, set nets, seines, gigs, bows and spikes, or by any other means than by hook and bait, shall be guilty of a misdemeanor, and, upon conviction before any court having jurisdiction of the offense, shall be fined not less than twenty-five nor more than one hundred dollars; provided, that this act shall not apply to persons owning private fish ponds, or to persons owning the land on both sides of a running stream, the same being closed by a substantial fence." By the third section, the judges of the circuit court are required to give the

act in charge to the grand jury; and by the fourth section, the grand juries are given inquisitorial powers as to violations of the act, and authorized to send for witnesses in order to make presentments. By the fifth section, it is provided that the provisions of the act shall not apply to the Cumberland, Tennessee and Big Hatchie rivers.

: The first objection made to the conviction in this ·case is, that the act of the Legislature under which the presentment was found, is unconstitutional because a partial law, and because it repeals previous acts of the General Assembly without reciting in its caption ·or otherwise the title or substance of the law repealed, as required by the Constitution, art. 2, sec. 17.

By the Constitution, art. 11, sec. 13, it is provided, that "the General Assembly shall have power to enact laws for the protection and preservation of game and fish within the State, and such laws may be enacted for and applied and enforced in particular ·counties or geographical districts designated by the General Assembly."

In view of this provision of the Constitution, the act of 1879 under consideration, cannot be considered as unconstitutional because enacted for and directed to be enforced in certain designated counties. The substance of the penal part of the act is that no person shall take fish in the waters of the designated counties, with a proviso that the act shall not apply to persons owning private fish ponds, or the lands on both sides of a running stream, which lands are enclosed by a substantial fence, and a further proviso that the

act shall not apply to certain streams which, as we judicially know, are navigable in a legal sense.

It has not been argued that the exemption of the waters of such streams from the provisions of the act, would render the act unconstitutional. These waters, together with the soil under the water below low-water mark, belong to the public, and the powers of the Legislature to regulate their use are plenary. The exemption of classes of persons not individuals from the penalties of prohibiting laws, is not obnoxious to constitutional exception. The "law of the land," in the sense of the Constitution, means any law which embraces all persons who are, or who may come into like situation and circumstances. Our criminal laws are all of this class, and are not amenable to the charge of unconstitutionality because they contain exemptions which, equally with the law, include all members of the community who may fall within their purview: *Davis* v. *State*, 3 Lea, 379; *West* v. *State*, 9 Hum., 66; *State* v. *Ranscher*, 1 Lea, 96.

The Constitution, art. 2, sec. 17, provides that "all acts which repeal, revive or amend former laws, shall recite in their caption or otherwise the title or substance of the law repealed, revived or amended."

This court held, at the recent April term, 1880, at Jackson, in the case of *The Home Insurance Company* v. *The Taxing District*, that the clause of the Constitution cited only applied, so far as acts which repeal are concerned, to such acts as undertake directly to repeal previous laws, and not to acts by the positive provisions of which previous laws may be re-

pealed by implication.  ¡This conclusion renders it un-
necessary to consider whether the act of June 17,
1870, ch. 19, being an act for the protection and
preservation of fish, and the act of 1875, ch. 114,
entitled an act to protect private fisheries, are either
wholly or partially repealed by the act of 1879 under
consideration.

Another ground of defense relied on is, that the
defendant is protected by the proviso of the second
section of the act.   The bill of exceptions shows that
the defendant below did, with other persons, catch
fish by drawing a net in Stone's river.   The stream,
at the *locus in quo*, runs through the land of one A.
M. Alexander, who claimed to be the owner of the
land on both sides of the river.   There is no doubt
that he owned the whole of the land on one side of
the stream, together with the bed of the stream at
low water, and the larger part of the land on the
other bank down to low-water mark, by regular title.
Between the lands thus owned by him on that bank,
a neighbor held title to a small strip to low-water
mark.   Four or five years before the trial below,
Alexander, in order to obtain the land between low
and high-water mark thus owned, made an exchange
of lands with the neighbor by parol.   The parties
have not executed conveyances of title, but each has
taken possession of the lands thus exchanged.   The
entire land thus claimed on both banks is completely
enclosed so as to keep out stock of every description,
the fence crossing the river above, and connecting
with the abutments of a mill-dam owned by Alexan-

·der below. A part of the fence which runs along the strip of land received by Alexander in the ex-·change is on the land of his neighbor with whom he made the exchange, and belongs to that neighbor. In July, 1879, Alexander was about to have the water ·drawn off the mill-pond in order to repair the dam. ·Several persons, whom he names, came to him a few days before the water was drawn off, and asked him to permit them to seine the pond when the water was drawn off. He said to them he had no objection, and they had his permission if it was not unlawful to do so, and take any other persons with them they pleased. The proof is, that the defendant was invited by one of the persons thus authorized to join in drawing the sein, and it was for this act the presentment was found. Alexander was not present when the fish were caught.

The object of the proviso to the second section of the statute was, beyond question, to exempt the persons named from the penalties of the act. So far as the proviso applied to the owners of private fishponds, the reason for the exemption is obvious and proper. The act would otherwise have unnecessarily interfered with the exercise of the right of private property. Such an owner might empty his pond and ·destroy the fish, or appropriate them as exclusively belonging to him. The Legislature may have intend-·ed to limit the further exemption of the proviso to the owners of both banks of a running stream, substantially enclosed, who had utilized the stream by ·creating an artificial pond for the purpose of a fish-

pond, and stocking it accordingly. They have not, however, said so; nor would that limitation of the language used be consistent with the legislative intent as disclosed by previous laws. By the act of 1875, ch. 114, to protect private fisheries, the right of the owners of the lands over which running waters flow, to use nets and seines themselves, and grant permission to others in writing to seine and net, is conceded. There is nothing in the act before us to make a distinction between persons owning the land on both sides of a running stream, properly enclosed, and persons owning private fish-ponds. What one class of owners might do, the other class might equally do. That the owner of a private fish-pond might with impunity, so far as the act of 1879 is concerned, take fish by seines and nets, or authorize others to do so, out of his pond, is clear, for the proviso says that the act shall not apply to persons owning private fish-ponds. The same must necessarily be true of the owners of both banks of a running stream, enclosed by a substantial fence. And it would be entirely too literal an interpretation of the act to say that the exemption from its penalties is limited to the person of the owners. The owner, singly, could not draw the seine, and if he could give permission to others if present, he might equally, upon well-settled principles, give permission to others to catch fish in his absence, in the prohibited modes.

Interpreting the language used in accordance with ordinary usage and common acceptation, the exemption is not merely to the owners, but to their rights of

fishery. It is not personal, for if the owner of a private fish-pond catch fish by net elsewhere than in his own pond, he would be clearly amenable to the penalties of the act.

The plain sense is, that a private fish-pond is not to be embraced in the prohibitions of the act, if the owner sanctions the catching of fish in his pond in any mode. It is his private property, to do with as he pleases. Whether intended or not, a private right of fishery in a running stream by the ownership of both banks, and enclosure of the land, is placed on the same footing.

The act does not, of course, require such a title to the land as might be necessary to sustain an action of ejectment. It is not a question of title, but of ownership. An actual holding and undisputed rights must necessarily be held sufficient to protect a *bona fide* owner, or any one acting under his authority. And it is, of course, immaterial whether a part of the enclosing fence belongs to the owner or not, if he has the benefit of it. It is sufficiently his fence to protect third persons acting under his authority.

The judgment must be reversed and the cause remanded.